In re John F. FLYNN, Debtor.

Elsie Stine, Appellant,

v.

Richard K. Diamond, Chapter 7 Trustee, Appellee.

BAP No. CC–02–1553–KPB.
Bankruptcy No. LA 01–33131–ER.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted on May 15, 2003.

Filed July 22, 2003.

Claudia Kloss, Venice, CA, for Elsie C. Stine.

Steven J. Schwartz, Danning, Gill, Diamond & Kollitz, Los Angeles, CA, for Richard K. Diamond, Ch. 7 Trustee.

Before KLEIN, PERRIS, and BRANDT, Bankruptcy Judges.

## OPINION

KLEIN, Bankruptcy Judge.

This appeal presents the questions of what expenses a co-owner may properly be charged under 11 U.S.C. § 363(j) in connection with the sale of the co-owner's interest in property under § 363(h) and whether the trustee may withhold proceeds due to the co-owner pending resolution of disputes between the co-owner and the trustee relating to the property.

The court ordered appellant co-owner to pay, as "costs of sale" pursuant to § 363(j), a pro-rata share of the trustee's attorneys' fees incurred defending title and selling the co-owned property under § 363(h). It reasoned that the fees related to the sale and directly benefitted the co-owner. Concluding that the pro-rata fee award was properly allowed under § 363(j) and that the withholding was appropriate, we AFFIRM.

## FACTS

John Flynn filed a chapter 7 bankruptcy case on July 30, 2001, in which Richard Diamond was appointed chapter 7 trustee.

The property of Flynn's estate included a 50 percent interest in real property located in Downey, California ("Downey property"), the other half of which was owned by the debtor's mother, appellant Elsie Stine.

An acrimonious state court partition action was pending between the debtor and Stine when the bankruptcy case was filed. The debtor had sued Stine in the Superior Court of Los Angeles County, California, for partition of the Downey property, contribution, breach of fiduciary duty associated with alleged fraud by Stine in placing a deed of trust on the property, and injunctive relief. Stine counterclaimed for partition of the Downey property.

The trustee stepped in and continued to litigate the debtor's partition action with Stine. They agreed to sell the Downey property under § 363(h) [1] *pendente lite* but reserved, and did not resolve, their rights with respect to the other counts in the partition action, including the contribution count for payment and maintenance funded by Flynn and the breach of fiduciary duty count based on a $20,000 deed of trust allegedly placed on the property by Stine without authority.

The bankruptcy court approved the sale of the Downey property for $361,000.00, pursuant to an auction that was set once the trustee's broker obtained an offer of $310,177.77 through normal marketing.

---

1. Section 363(h) provides in relevant part:
 [T]he trustee may sell both the estate's interest, under subsection (b) or (c) of this section, and the interest of any co-owner in property in which the debtor had, at the time of the commencement of the case, an undivided interest as a tenant in common, joint tenant, or tenant by the entirety, only if ... (3) the benefit to the estate of a sale of such property free of the interests of co-owners outweighs the detriment, if any, to such co-owners[.]
 11 U.S.C. § 363(h).

The sale produced about $120,000 in net proceeds after paying liens and real estate commissions.

The trustee applied for attorneys' fees and expenses for his counsel for services alleged to have benefitted the co-owned property and sought permission to pay the award from sale proceeds of the Downey property before any distribution to Stine.

The fees that were allegedly chargeable to the Downey property were as follows: (1) defending the Downey property from relief from stay proceedings ($3,430.00); (2) marketing and selling the Downey property ($20,368.50); (3) litigating the partition suit and negotiating the proposed stipulation with Stine ($7,109.50); (4) clearing a cloud on title created by an unauthorized deed on the Downey property to one Ford ($6,507.00).

The trustee also sought leave to withhold Stine's share of the sale proceeds, pending resolution of the remaining issues in the partition action relating to contribution rights and the breach of fiduciary duty claim.

Stine did not quarrel with the amount of fees and expenses but objected that the entire fee amount should be paid solely from the estate's one-half share of the sale proceeds. The bankruptcy court granted the trustee's motion in part, finding that only the defense of the Downey property from relief from stay proceedings ($3,430.00) and the services in connection with sale expenses of the Downey property ($20,368.50) were sufficiently related so as to have directly benefitted Stine. The balance of the trustee's request was denied. Stine was ordered to pay a pro-rata share of the $23,798.50 in fees related to these two categories only.

The bankruptcy court also authorized the trustee to withhold Stine's share of the proceeds until all issues regarding their respective rights regarding the co-owned property were resolved.

This timely appeal ensued.

## JURISDICTION

The bankruptcy court had jurisdiction via 28 U.S.C. §§ 1334 and 157(b)(1). We have jurisdiction under 28 U.S.C. § 158(a)(1).

## ISSUES

1. Whether attorneys' fees awarded to the trustee were recoverable under § 363(j) as costs of sale of property owned jointly by the estate and a non-debtor co-owner.

2. Whether § 363(j) permits a trustee to withhold sales proceeds pending resolution of other disputes with the co-owner relating to the co-owned property.

## STANDARD OF REVIEW

■ We review questions regarding construction of the Bankruptcy Code de novo and factual findings for clear error. *Gonzalez v. Munoz (In re Munoz)* 287 B.R. 546, 550 (9th Cir. BAP 2002).

## DISCUSSION

We begin with the question of whether the trustee's expenses of marketing and selling the co-owned property may be charged to the sale proceeds. Then we address whether the proceeds may be withheld pending resolution of other disputes with the co-owner relating to the co-owned property.

### I

The first question relates to which of the trustee's costs and expenses may be charged against sale proceeds and, thus, borne pro-rata by the co-owners. The bankruptcy court ruled that trustee ex-

penses incurred marketing and selling the property and defending a stay relief matter to prevent a foreclosure were properly chargeable to the property. It rejected other allegedly beneficial services, which rejection has not been appealed.

Answering the question requires that we refer to Bankruptcy Code § 363(j) and applicable nonbankruptcy law.

### A

The primary issue is whether the trustee's attorneys' fees for services necessary to fend off foreclosure and to market the Downey property may properly be charged against the Downey property as "costs and expenses" of the sale for purposes of § 363(j), which provides:

> After a sale of property to which subsection (g) or (h) of this section applies, the trustee shall distribute to the debtor's spouse or the co-owners of such property, as the case may be, and to the estate, the proceeds of such sale, *less the costs and expenses, not including any compensation of the trustee,* of such sale, according to the interests of such spouse or co-owners, and of the estate.

11 U.S.C. § 363(j) (emphasis added).

The legislative history is brief and conclusory: "Subsection (j) requires the trustee to distribute to the spouse or co-owner the appropriate portion of the proceeds of the sale, less certain administrative expenses." H. Rep. No. 95–595, at 346 (1977); S.Rep. No. 95–989, at 57 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5963, 6302, 5787, 5843.

A paucity of case law regarding § 363(j) leaves few guideposts. *Rishel v. Rishel,* 166 B.R. 276, 278 (Bankr.W.D.Pa.1994).

Stine makes two specific arguments regarding § 363(j). First, she notes that the Code is explicit about costs of preserving or disposing of estate property only with respect to secured creditors pursuant to § 506(c). Stine contends that the omission of a parallel provision with respect to co-owners in § 363(j) evidences an intent by Congress to protect co-owners from paying such costs. Secondly, Stine contends that "costs and expenses" as stated in § 363(j) were intended to be limited to traditional real estate closing costs.

### 1

Stine's argument regarding lack of parallelism between § 363(j) and § 506(c) derives from dictum in the Ninth Circuit's *Golden Plan* decision, in which it held that a trustee's § 506(c) authority to surcharge secured creditors with expenses incurred in "preserving" and "disposing of" the secured property does not authorize surcharges of owners. *Bear v. Coben (In re Golden Plan of California, Inc.),* 829 F.2d 705, 712–13 (9th Cir.1987).

The *Golden Plan* decision contains observations that the "Bankruptcy Code does not provide for the imposition of costs on owners as opposed to secured parties" and that § 506(c) cannot be extended by the exercise of equitable powers. *Id.* at 713.

We agree with the trustee that *Golden Plan* dealt only with the imposition of costs and expenses pursuant to § 506(c). As there was no issue implicating § 363(j), the above-quoted dictum must be understood as referring only to § 506(c). Indeed, it could hardly be otherwise in light of plain language in § 363(j) expressly contradicting the assertion in the *Golden Plan* dictum.

Since § 363(j) explicitly allows "costs and expenses" of selling co-owners' property to be imposed on non-debtor co-owners, the *Golden Plan* dictum does not constitute an inadvertent trumping of § 363(j).

#### 2

Stine's second argument is that the phrase "costs and expenses of such sale" should be read narrowly and limited to traditional real estate closing costs.

■ We agree with the bankruptcy court that the phrase "costs and expenses of such sale" subsumes expenses that benefit and facilitate the transaction in a material manner. It is a fact-specific inquiry that is not necessarily limited to those expenses that are traditional real estate closing costs typically paid through the closing of sale through escrow. Rather, it also encompasses such other expenses as attorneys' fees that are found to be necessary to the particular transaction and that benefit the co-owner. *See In re Fill,* 76 B.R. 356, 357 (Bankr.S.D.N.Y.1987); A. RESNICK & H. SOMMER, *COLLIER ON BANKRUPTCY* ¶ 363.08[8][c] (15th ed. rev.2002) ("COLLIER").

■ The bankruptcy court determined that Stine was directly benefitted by two categories of services in the fee application. First, direct benefit was found in $3,430.00 in fees for defending a motion for relief from stay and negotiating to defer foreclosure until after a sale could be consummated. Second, direct benefit was found in $20,365.50 in fees in the category of services labeled by counsel as "asset disposition," which category included negotiating with the secured creditor over accounting of appropriate charges and loan payoff sums, dealing with insurance issues, dealing with a lis pendens, analyzing offers and counteroffers, and dealing with a real estate broker regarding valuation and marketing of the property.

In the litigious context of this case, we cannot say that the court's findings of direct benefit were clearly erroneous. *Crocker Nat'l Bank v. Am. Mariner Indus., Inc. (In re Am. Mariner Indus., Inc.)* 734 F.2d 426, 429 (9th Cir.1984).

We so conclude even though some of the services—e.g. discussions with a broker regarding valuation and marketing of the Downey property—appear to be services reflecting trustee duties that ordinarily ought to be performed by any qualified trustee without assistance of counsel and thus would ordinarily be disqualified from payment under § 363(j). *See In re McKenna,* 93 B.R. 238, 240–42 & n. 2 (Bankr.E.D.Cal.1988) (collecting cases); *accord In re Eureka Upholstering Co.,* 48 F.2d 95, 96 (2d Cir.1931), *cited with approval,* COLLIER ¶ 330.05[1] n. 3. Moreover, Stine has not challenged the amount of any specific services and hence has waived any issue relating to the problem of attorneys performing trustee duties.[2]

Stine argues that we should distinguish between "direct" and "incidental" benefits and that the services performed by trustee's counsel should be characterized as "incidental." We need not, however, reach this question because, as noted, we see no error in the bankruptcy court's finding that the services were sufficiently related to the sale and directly benefitted Stine. Thus, the facts of this appeal present only the question of direct benefit.

---

**2.** Any error in this respect is also likely to have been harmless in fact as cancelled by offsetting error. The bankruptcy court disallowed the fee category labeled "Ford Litigation" in the amount of $6,507. However, these expenses dealt with clearing a cloud on title—a "wild deed" that was recorded to the Downey property in question just prior to the sale closing. Arguably, these expenses also directly benefitted Stine because the title to the real property was cleared and the sale was consummated. Therefore, it might have been reasonable for the bankruptcy court to assess Stine a pro-rata share of these expenses as well. (Because there was no cross-appeal by the trustee, this issue has been waived.)

The cases cited by Stine do not compel a contrary conclusion. Both cases are decisions of bankruptcy courts in other circuits that can be read to be characterizing the requested payment as trustee compensation that is expressly excluded from § 363(j) adjustment. Neither case squarely focuses on the question now before us. *Rodriguez v. Citibank, F.S.B. (In re Nowicki)*, 202 B.R. 729, 733 (Bankr.N.D.Ill. 1996); *Rishel*, 166 B.R. at 278.

The bottom line is that Stine stands to receive about $60,000, less costs and expenses and any contribution and fiduciary duty adjustments, from the sale of the Downey property that would have been foreclosed upon without the efforts of the trustee and his counsel. Moreover, in this appeal, Stine does not contend that she would have been spared such expenses outside of the bankruptcy context.

### B

Stine's property rights under applicable nonbankruptcy law also inform our analysis. Stine has an interest in California property and presumably should be entitled to what she would receive in a partition action under California law.

 The Bankruptcy Code refers to state law when it conditions the § 363(h) sale authority on the proposition that partition in kind of such property among the estate and the co-owners is impracticable. 11 U.S.C. § 363(h). This is consistent with the principle that, except where it has provided otherwise, Congress has left the determination of property rights in assets of a bankruptcy estate to state law. *Butner v. United States*, 440 U.S. 48, 54–55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). In short, the estate and co-owner each own that to which state property law entitles them. Thus, we construe § 363 in light of the property rights Stine and the trustee have under California law.

In this instance, the § 363 sale was by consent, resolving one of several counts in a partition action under California law in circumstances that left unresolved the balance of the action relating to various accounting issues among the co-owners.

 In California, a partition may be by physical division of the property or by sale. Such an action normally includes an accounting so that the respective rights of the parties can be adjusted and settled. *See, Lazzarevich v. Lazzarevich*, 39 Cal.2d 48, 51, 244 P.2d 1 (1952); HARRY D. MILLER ET AL., CALIFORNIA REAL ESTATE § 12:19 (3d ed. 2001) ("MILLER & STARR"). Commonly, a cotenant who has advanced funds to pay common expenses is entitled to be reimbursed from the sale proceeds before distribution. MILLER & STARR § 12:19. Conversely, a cotenant out of possession can demand an accounting from a cotenant in possession for rents and profits in the division of sales proceeds. MILLER & STARR § 12:19; *see also* CAL. CODE. CIV. PROC. § 872.430;. Therefore, whether or not Stine had been in possession of the real property, she could have potentially been liable for an amount greater than the pro-rata fee expense awarded against her.

 Additionally, when property is partitioned by sale in California, the sale proceeds are first used to pay general costs of the action. Costs reimbursed before any distribution to either cotenant include fees for *any* attorney engaged for the common benefit of the parties, as well as costs and expenses of any referee and third parties hired by the referee, the costs of title reports, and interest on any of these expenditures. CAL. CODE. CIV. PROC. §§ 874.010—874.050; MILLER & STARR § 12:19.

 Upon completion of a partition sale, the California court may award attor-

neys' fees that are paid by a party to the action for the common benefit of all co-owners. Furthermore, when the services of the attorneys for both parties are for the common benefit, the court may award fees to both parties. *Riley v. Turpin*, 53 Cal.2d 598, 603, 2 Cal.Rptr. 457, 349 P.2d 63 (1960); MILLER & STARR § 12:19. However, attorneys' fees should not be awarded for services not performed for the common benefit. *Williams v. Miranda*, 159 Cal.App.2d 143, 158, 323 P.2d 794 (Cal.Ct. App.1958); MILLER & STARR § 12:19.

■ The bankruptcy court's award in this instance is consistent with these non-bankruptcy rules. Defending the property against a foreclosing creditor in a bankruptcy stay relief matter would be eligible for common benefit allocation under California law, as would legal fees in connection with selling the property, including negotiations and services directed towards the ability to deliver clear title.

Thus, the sums that the court authorized to be paid from the sale proceeds, as a matter of California law independent of § 363(j), were appropriate.

## II

■ Next, we must determine whether § 363(j) authorizes the trustee to withhold appellant Stine's share of the sale proceeds pending resolution of other claims in connection with the partition of the parties' interests in the Downey property. The key procedural fact is that Stine's agreement to the sale was an agreement *pendente lite* in which she did not agree to resolve the contribution and breach of fiduciary duty issues asserted in the partition action, which issues ultimately affect the distribution of proceeds.

The statute says that "after a sale," the trustee "shall distribute" but is not more specific about *when* the distribution should occur. 11 U.S.C. § 363(j). Although little case law exists on the point, we have the benefit of a first step. *Aino v. Maruko, Inc. (In re Maruko, Inc.)*, 200 B.R. 876, 881 (Bankr.S.D.Cal.1996).

The bankruptcy court in *Maruko* court ruled that § 363(j) mandates immediate distribution of the co-owner's share. It reasoned that § 363(j) is linked to § 363(h) and cannot be read in isolation. *Id.* at 882, 884. Section 363(h) refers us to the petition date for the determination of interests in the property. As a result, the *Maruko* court determined that this explicit measuring point added to the mandatory language of § 363(j) concerning distribution equaled a Congressional intent to require immediate distribution to co-owners. *Id.* at 882.

We agree with *Maruko*, as far as it goes, and would not countenance abusive foot-dragging. Nevertheless, we are faced in this appeal with a different problem, one which involves the question-begging fallacy. Until one knows what the appropriate adjustments are under California law, one cannot determine the net cash value of Stine's share.

The contribution and breach of fiduciary duty issues remaining between Stine and the estate are part of the underlying partition action, which action must be resolved in its entirety before full distribution is practicable. If there is a significant portion of Stine's share of the net proceeds to which she is unquestionably entitled, a prompt partial distribution might be appropriate consistent with *Maruko*. Any portion that is subject to controversy, however, may properly be withheld.

\* \* \* \* \* \*

The bankruptcy court's order compelling co-owner Stine to pay a pro-rata share of the trustee's attorneys' fees incurred in preserving and selling the property was consistent with § 363(j) and applicable nonbankruptcy law. Distribution of dis-

puted funds to Stine need not be required until the various adjustments asserted in the partition action have been resolved.

Accordingly, we AFFIRM.