**In re Robin Virginia HEINZE, Debtor.**

**No. 02–83050C–7D.**

United States Bankruptcy Court,
M.D. North Carolina,
Durham Division.

April 16, 2009.

John T. Orcutt, Raleigh, NC, for Debtor.

## MEMORANDUM OPINION

WILLIAM L. STOCKS, Bankruptcy Judge.

This case came before the court on March 30 and April 8, 2009, for hearing on the Trustee's Motion for Order to Allocate Expenses of Sale of Personal Property ("Motion") (Docket # 295). Sara A. Conti appeared as Chapter 7 trustee ("Trustee") and George Paul Laroque appeared pro se by telephone. Having considered the Motion, the evidence offered at the hearing and the arguments on behalf of the parties, the court makes the following findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure and Rule 52 of the Federal Rules of Civil Procedure.

## JURISDICTION

The court has jurisdiction over the subject matter of this proceeding pursuant to 28 U.S.C. §§ 151, 157, and 1334, and the General Order of Reference entered by the United States District Court for the Middle District of North Carolina on August 15, 1984. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(A) and (O) which this court may hear and determine.

## FACTS

On August 1, 2008, this court entered a judgment in adversary proceeding 08–09012 (*Sara A. Conti, Trustee v. George Paul Laroque*) granting the Trustee authority to sell pursuant to section 363(h) of the Bankruptcy Code certain personal property jointly owned by the Debtor and George Paul Laroque ("Mr.Laroque")(Docket # 146). The judgment further directed that any sale pursuant to the authority granted by the judgment would be determined by further orders of the court.

On August 5, 2008, the Trustee filed a motion in this case seeking authorization to sell certain of the jointly-owned property at a public auction sale to be conducted by Cindy Smith of Cindy Smith Auction and Estate Sales at her place of business located at 361 JaMax Road, Hillsborough, North Carolina (Docket # 171). The Trustee earlier had obtained authority to employ Cindy Smith for the appraisal and/or private or public sale of property in this case, with her compensation to be set by the court after notice and hearing (Docket # 56).

On September 3, 2008, an order was entered granting the Trustee's motion for public sale (Docket # 190). Pursuant to that order, jointly-owned personal property was sold at public auction through sales that were conducted by Cindy Smith on September 14 and 21, 2008, and on October 12 and 19, 2008. The personal property that was sold at these sales consisted of several hundred items of jointly-owned household furnishings and accessories, artwork, decorative items and collectibles of various kinds which produced gross sales proceeds of $42,850.00. (Docket # 212).

On November 3, 2008, the Trustee filed an application for authority to compensate Cindy Smith for the services rendered and expenses incurred by her in connection with the sale of the jointly-owned property in September and October of 2008 (Docket # 213). Following notice and a hearing on the Trustee's application, the court entered an order on November 17, 2008 (Docket # 253), approving an auctioneer's fee of $4,285,00 for Cindy Smith, and authorizing the Trustee to reimburse her for expenses of $14,974.37 that were incurred in connection with the sale of the jointly-owned property. The expenses consisted of $3,974.50 of labor costs related to the auctioneer packing, loading and transporting the voluminous items of personal property to the location at which the sales were conducted, $7,000.00 for storage of the jointly-owned property while the Trustee pursued the proceedings required in order to obtain authority to sell the property, $2,804.00 in labor costs related to the auctioneer unpacking and preparing the property for inspection by prospective purchasers prior to the sales, and $1,195.87 of expenses incurred in advertising the sales. All of these expenses were incurred in connection with the sale of personal property that was jointly owned by the Debtor and Mr. Laroque. In approving these expenses and authorizing the payment of the expenses, the court found that all of the expenses were reasonable and properly incurred by the Trustee.

In the motion now before the court, the Trustee moves pursuant to section 363(j) for an allocation of the fees and expenses related to the sale of the jointly-owned property between the estate and Mr. Laroque. The Trustee contends that the estate and Mr. Laroque each held a fifty percent interest in the jointly-owned personal property and that the auctioneer's fee and the expenses other than the storage expense should be divided according to ownership interests of the estate and Mr. Laroque with the estate and Mr. Laroque each bearing fifty percent of such fee and expenses. As to the storage cost, the trustee contends that all of the storage cost incurred after April 14, 2008, the date of the Trustee's last attempt to obtain a consensual sale of the jointly-owned property, should be taxed against Mr. Laroque. The Trustee also contends that $12,348.00 of the Trustee's attorney's fees should be taxed against Mr. Laroque. Mr. Laroque contends that none of these items should be allocated to or taxed against him.

ANALYSIS

The sale of the jointly-owned personal property was made pursuant to section 363(h) of the Bankruptcy Code. As a result, section 363(j) is applicable with respect to the division of the proceeds from such sale. Section 363(j) provides:

> After a sale of property to which subsection (g) or (h) of this section applies, the trustee shall distribute to the debtor's spouse or the co-owners of such property, as the case may be, and to the estate, the proceeds of such sale, less the costs and expenses, not including any compensation of the trustee, of such sale, according to the interests of such spouse or co-owners, and of the estate.

■ In proceeding under this section, a trustee who has sold jointly-owned property pursuant to section 363(h) should subtract the "costs and expenses ... of such sale" from the gross proceeds of the sale, and then divide the balance of such proceeds between the estate and the co-owner "according to the interests" of the coowner and the estate. *See In re Jackson,* No. 01–13153, 2003 WL 21991629, at *7 (Bankr.D.N.H.2003).

■ In the present case, the proceeds of the sale is a known, readily available figure, to wit, $42,850.00. The more difficult question is whether the auctioneer fee and expenses described by the Trustee constitute "costs and expenses" of the sale of the jointly-owned personal property for purposes of section 363(j). There is nothing in section 363 or elsewhere in the Bankruptcy Code that purports to define what qualifies as a cost or expense of sale under section 363(j), and the scant case law, legislative history, and commentary on section 363(j) provide little guidance on what criteria should be used in making that determination. Without attempting to provide an all-encompassing definition of the costs and expenses that may qualify as a cost of sale under section 363(j), the court concludes that the deductible costs and expenses under section 363(j) at least include those costs and expenses that facilitate the sale in a material manner. *See In re Flynn,* 297 B.R. 599, 604 (9th Cir. BAP 2003), rev'd on other grounds, 418 F.3d 1005 (9th Cir.2005).

■ The determination of whether a cost or expense materially facilitates a sale is a fact-specific inquiry that must be done on a case-by-case basis and may vary according to the number and nature of the assets that were sold, the type of sale utilized and the other particulars of the case before the court. In making such an inquiry in the present case, it is important to bear in mind that the sale involved an unusually large number of items. There were hundreds of various household furnishings and accessories, artwork, decorative items and collectibles of various kinds. Most of these items were located at the Debtor's former residence. The residence and the other locations where the property was located were not owned or controlled by the bankruptcy estate or Mr. Laroque, and the items could not be left at these locations. Many of the items were fragile and had to be carefully packed by the auctioneer and her employees in order to avoid damage while being moved. This process also involved the auctioneer and her employees conducting an inventory of the numerous items of property and preparing an itemized list of such property. The final step in what the auctioneer has referred to as the procurement of the property was transporting the property to the auctioneer's place of business, which required several trips because of the volume of property involved. This procurement process was performed over a period of several days by various employees of the auctioneer and necessitated more than 160 hours of work at a cost of $3,974.50. This procurement process had to be performed in order to sell the property, clearly facilitated the sale of the property in a material manner, and thus is an expense of sale which may be deducted from the sale proceeds before the division of the proceeds between the estate and Mr. Laroque.

■ The sale of the property could not be conducted without the consent of Mr. Laroque, the co-owner of the property. His unwillingness to consent to a sale meant that the Trustee was required to obtain court authorization to sale the property pursuant to section 363(h), which necessitated the filing and prosecution of an

adversary proceeding.[1] Pending the resolution of the adversary proceeding the property had to be stored, which occurred at buildings leased by the auctioneer. Because of the volume of property involved, this required over 1,000 square feet of storage space for a period of some nine months. The storage of the property under the foregoing circumstances likewise facilitated the sale of the property and thus also is an expense of sale that may be deducted from the sale proceeds prior to the division between the estate and Mr. Laroque. As noted above, in earlier granting the Trustee's application for authority to pay this storage charge (Docket # 253), the court found that the $7,000.00 storage charge was reasonable under the circumstances of this case and hereby reaffirms that finding. The amount of the deduction for storage before division of the sales proceeds therefore is $7,000.00.

■ In order to maximize sales proceeds, the auctioneer advertised the sales in *Antique Week*, a publication circulated to prospective purchasers, and in *The Durham Herald Sun*, as well as in 650 mailings and flyers prepared and distributed by the auctioneer. The cost of this advertising was $1,195.00 as detailed in the Trustee's Motion for Authority to Compensate Auctioneer (Docket # 213). As with any public auction sale, the advertising of the sale facilitated the sale of the property to a material degree and the advertising cost of $1,195.00 therefore may be deducted before the division of sale proceeds between the estate and Mr. Laroque.

■ Finally, in September and October of 2008, the auctioneer conducted the auction sales at her place of business which required sales on four different days as a result of the large number of items of property that were sold. Before she could conduct the sales, however, it was necessary to unpack the property, condition it and place it on display so that it could be offered for sale at the auctions conducted by the auctioneer. The cost of performing this work was $2,804.00, based upon the number of employee involved and the amount of time required to do so. This work materially facilitated the sale of the jointly-owned property and also is a cost that may be deducted before the division of the sale proceeds.

■ The final charge in this case is the auctioneer's fee of $4,285.00 which was based upon a 10% commission, the market rate of compensation in this district for auctioneers who conduct public sales in bankruptcy cases. Quite obviously, the services of the auctioneer in conducting the sales of the jointly-owned property facilitated the sales in a material manner and is an expense of sale that may be deducted from the sale proceeds before the division of the proceeds between the estate and Mr. Laroque.

While there is little case law and commentary regarding the foregoing types of expenses in the context of a section 363(j) proceeding, there is case law and commentary regarding such expenses in the context of section 506(c), which is instructive in this case. Section 506(c) allows a trustee to recover "the reasonable, necessary costs and expenses of preserving, or disposing of" property that is encumbered by liens to the extent of any benefit to the lienholders. When a claim is made under section 506(c) as a result of the trustee having sold encumbered property, one of the issues that arises is analogous to the issue in the present case, namely, what

---

1. Under Bankruptcy Rule 7001(3), a proceeding to obtain approval under § 363(h) for the sale of both the interest of the estate and of a co-owner in property is required to be an adversary proceeding.

costs or expenses qualify as a necessary cost or expense of the sale of the property at issue. According to *Collier*, there are certain types of expenses that the courts generally have treated as necessary costs of disposing of property, which *Collier* summarizes as follows:

> In general, items that may qualify as "necessary" expenses include appraisal fees, auctioneer fees, advertising costs, moving expenses, storage charges, payroll of employees directly and solely involved with the disposition of the subject property, maintenance and repair costs, and marketing costs.

4 *Collier on Bankruptcy*, ¶ 506.05[3], p. 506–126 (15th ed. rev.2008). The auctioneer's fee and expenses in this case fall within the categories of expenses that decisions involving section 506(c) have treated as necessary expenses of sale, and it would seem that such decisions are a good indication that the same types of expenses should qualify as materially facilitative, if not necessary, where a trustee has sold property pursuant to section 363(h).

The remaining matter for consideration involves the $12,348.00 of attorney fees described by the Trustee in her motion and whether such fees should be deducted from the proceeds of sale. The attorney fees are based upon 58.8 hours of attorney time which the Trustee asserts were spent by her as attorney for the Trustee in prosecuting the section 363(h) adversary proceeding, which she asserts was necessitated by Mr. Laroque's refusal to consent to the sale, and in responding to numerous motions and appeals by Mr. La-

roque, which the Trustee alleges were spurious and/or frivolous. According to the itemization submitted by the Trustee, 39.8 hours of attorney time were related to the adversary proceeding, and 19 hours were expended in responding to various motions and appeals by Mr. Laroque.

There is considerable uncertainty regarding the extent to which attorney's fees may be charged against a co-owner's share of the sale proceeds where property has been sold pursuant to section 363(h). While some decisions recognize that there are circumstances in which attorney's fees may be deducted from the proceeds of sale under section 363(j), these decisions have taken a conservative approach in determining when attorney's fees may be treated as a cost of sale under section 363(j). *See Stine v. Diamond (In re Flynn)*, 418 F.3d 1005, 1008 n. 2 (9th Cir.2005) ("in a jurisdiction where the services of an attorney are required at closing, those fees are part of the expense of sale of property")[2] *In re Jackson*, No. 01–13153, 2003 WL 21991629, at \*7 (Bankr.D.N.H.2003)(costs of sale include "nominal legal expenses for the preparation of documents and compliance with any state laws or regulations in connection with the sale of the property"); *In re Fill*, 76 B.R. 356, 357 (Bankr. S.D.N.Y.1987)(co-owner was "chargeable with the costs of sale, including attorneys' fees, but limited to fees for services which were necessary and directly benefitted the spouse"). While these decisions are not definitive regarding the exact extent to which attorney's fees may be treated as a cost of sale under section 363(j), it does

---

**2.** In *Stine* the court did not allow the attorney's fees at issue to be deducted from the sale proceeds based upon the language in section 363(j) that excludes "compensation of the trustee" from being a cost or expense of sale. The court stated that "the attorney's fees in this case were incurred for preserving and disposing of property within the bank-

rupt's estate" which the court said was "within the duties of a Chapter 7 bankruptcy trustee." As a result, the attorney's fees were treated as excluded trustee compensation. This result seems to blur the distinction between trustee compensation and the compensation of a professional employed by the trustee pursuant to section 327.

seem clear that at a minimum, the attorney's fees must be directly related to the sale transaction that gives rise to the proceeds in order to be treated as a cost of sale and charged against the proceeds of sale. The attorney's fees at issue in this proceeding do not meet this minimum requirement. None of the fees involved attorney time that was expended in arranging or facilitating the auction sale or the preparation of closing documents, attending a closing or otherwise facilitating the transfer of assets. The motions and appeals that resulted in the attorney's fees mainly involved discovery and other forms of relief sought by Mr. Laroque rather than the sale of the jointly-owned property. The adversary proceeding against Mr. Laroque involved the Trustee obtaining authority to conduct a sale, and not the actual sales that ultimately were conducted once the adversary proceeding was adjudicated. To the extent that the services giving rise to the fees had any connection with the sale of the jointly-owned property, such connection was indirect and too tenuous for the fees to be regarded as an expense or cost of the sale for purposes of section 363(j). Accordingly, the court concludes that the attorney's fees alleged by the Trustee may not be deducted from the proceeds of sale prior to the division of such proceeds between the estate and Mr. Laroque.

The court also declines to "tax" the attorney's fees against Mr. Laroque in this proceeding. Section 363(j) provides the mechanism for dividing the proceeds from property that is sold under section 363(h). Under the prescribed mechanism the costs and expenses of the sale are deducted from the proceeds of the sale prior to the division between the bankruptcy estate and the co-owner of the property, which results in an equal division of the costs and expenses of the sale between the

estate and the co-owner. There is nothing in section 363(j) that permits the court to alter this formula and charge a co-owner with more than his pro rata share of costs or expenses of sale. Thus, if an item is an expense or cost of sale, section 363(j) is applicable and an equal division is required. If, as with the attorney's fees described in the motion, the item is not a cost of sale, section 363(j) is not applicable and may not be utilized to tax the costs against an opposing party. This does not mean that a co-owner such as Mr. Laroque cannot be sanctioned or held liable for attorney's fees if there are grounds for doing so, but does mean that attorney's fees or other sanctions must be sought by means of a pleading or motion other than one under section 363(j). The denial of the Trustee's request in this proceeding that the attorney's fees and storage cost be taxed against Mr. Laroque therefore shall be without prejudice to the Trustee seeking such relief in a pleading or motion other than one filed under section 363(j).

In summary, the court is satisfied that all of the expenses that were approved in the order entered on November 17, 2008 (Docket # 253), significantly and materially facilitated the sale of the jointly-owned property and are properly deductible from the proceeds realized from the sale prior to the division of such proceeds between the estate and Mr. Laroque. These expenses, consisting of the $3,974.50 procurement expense, the $7,000.00 storage expense, the $1,195.87 advertising expense, the $2,804.00 preparation expense and the $4,285.00 auctioneer fee, total $19,259.37. Pursuant to section 363(j), the total expense figure of $19,259.37 should be subtracted from the sales proceeds figure of $42,850.00, leaving a balance of $23,590.63 to be divided equally between the estate and Mr. Laroque based upon the joint ownership as tenants in common that ex-

584

isted with respect to the personal property that was sold.

An order in accordance with this memorandum opinion shall be entered pursuant to Rule 58 of the Federal Rules of Civil Procedure and Rule 9021 of the Federal Rules of Bankruptcy Procedure.

### *ORDER*

In accordance with the memorandum opinion filed herewith, it is ORDERED, ADJUDGED AND DECREED that all of the expenses that were approved in the order entered on November 17, 2008 (Docket # 253), significantly and materially facilitated the sale of the jointly-owned property and are properly deductible from the proceeds realized from the sale prior to the division of such proceeds between the estate and Mr. Laroque. Pursuant to section 363(j), these expenses, consisting of the $3,974.50 procurement expense, the $7,000.00 storage expense, the $1,195.87 advertising expense, the $2,804.00 preparation expense and the $4,285.00 auctioneer fee, shall be subtracted from the sales proceeds figure of $42,850.00, leaving a balance of $23,590.63 to be divided equally between the estate and Mr. Laroque based upon the joint ownership as tenants in common that existed with respect to the personal property that was sold.